UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

BELINDA JOHNSON,

             Plaintiff,

     v.

                                          23-CV-197-LJV
                                          DECISION & ORDER

UNITED STATES OF AMERICA,

             Defendant.

───────────────────────────────

On March 3, 2023, Belinda Johnson filed this action against the United States of America under the Federal Tort Claims Act ("FTCA").  Docket Item 1.  Johnson alleges that a doctor at an FTCA-covered health center negligently "fail[ed] to timely diagnose and treat cancer in [her] right breast."  *Id.* at ¶¶ 3-4.

On March 7, 2024, the United States moved for summary judgment.  Docket Item 16.  After Johnson responded, Docket Item 19, and the United States replied, Docket Item 20, on November 15, 2024, this Court heard oral argument on the motion, Docket Item 26.  The Court then allowed Johnson to file supplemental affidavits in support of her opposition to the United States' motion, *see* Docket Items 27, 28, and 29; the United States responded to those filings, Docket Item 30; and Johnson replied, Docket Item 31.

For the reasons that follow, this Court grants the United States' motion for summary judgment.

## BACKGROUND[1]

Throughout 2018 and 2019, Johnson received medical care from Dr. Pamela Reed at the Community Health Center of Buffalo, Inc. ("CHCB"). Docket Item 19-1 at ¶¶ 11-15; Docket Item 19-2 at 7-16.[2] In January 2018, after Johnson reported "a new lump in her breast," Dr. Reed "referred her for a . . . mammogram and ultrasound." Docket Item 19-1 at ¶ 11; Docket Item 19-2 at 7. The doctor who interpreted those tests concluded that the lump was "probably benign" but recommended that Johnson undergo another mammogram and ultrasound in six months. Docket Item 19-1 at ¶ 12; Docket Item 19-2 at 17.

"Over the next year, . . . Johnson saw Dr. Reed four additional times," but "[d]espite the lump and the recommendation to conduct follow-up imaging in six months, Dr. Reed took zero action to rule out breast cancer." Docket Item 19-1 at ¶¶ 13-14. In fact, Dr. Reed did nothing until January 2019, when Johnson "reported that [the] lump had gotten bigger" and Dr. Reed "sent [her] for more imaging." *Id.* at ¶ 15. Subsequent tests "revealed that . . . Johnson had invasive ductal carcinoma." *Id.* at ¶¶ 16-17.

---

[1] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party. *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The facts in this section are taken from the parties' statements of material facts, Docket Items 16-2, 19-1, and 20-2; the exhibits incorporated in those filings, *see* Docket Items 16-3 and 19-2; and the supplemental declarations submitted by Johnson and her counsel, Docket Items 28 and 29. The Court also refers to various other docket items in explaining this case's procedural history.

The parties do not contest the underlying facts here; instead, their dispute turns on whether those facts justify equitable tolling. *Compare* Docket Items 16-2 and 20-2, *with* Docket Item 19-1.

[2] Page numbers in docket citations refer to ECF pagination.

On September 1, 2021, Johnson filed an administrative tort claim with the Department of Health and Human Services ("HHS"), asserting that as an employee of CHCB, Dr. Reed "failed to timely and properly" diagnose Johnson's breast cancer. Docket Item 16-3 at 6-7 (copy of administrative claim); Docket Item 16-2 at ¶ 1; Docket Item 19-1 at ¶ 1.  The next day, HHS confirmed via email that it had received the claim, Docket Item 16-3 at 8 (copy of email); Docket Item 19-1 at ¶ 19, and about a month later, on October 7, 2021, HHS sent a letter to the law firm representing Johnson requesting additional documentation, Docket Item 16-2 at ¶ 2; Docket Item 16-3 at 10-11; Docket Item 19-1 at ¶ 20.  On October 12, 2021, Johnson's counsel replied to HHS and supplied the requested materials.  Docket Item 16-3 at 13-14; Docket Item 19-1 at ¶ 21.

On December 21, 2021, and again on July 5, 2022, counsel for Johnson sent letters to HHS seeking "an update as to the status of [Johnson's] claim as soon as possible."  Docket Item 16-3 at 16 (first letter); *id.* at 18 (second letter); Docket Item 16-2 at ¶¶ 5-6; Docket Item 19-1 at ¶¶ 22-25.  HHS did not respond to either inquiry.  *See* Docket Item 19-1 at ¶¶ 22-25.

On August 4, 2022, HHS denied Johnson's claim and sent a notice of that denial to the law firm representing her.  Docket Item 16-3 at 21-26; Docket Item 19-1 at ¶ 7. But due to an error by one of the firm's legal assistants, the denial letter was misfiled as a "lien" letter.  Docket Item 19-1 at ¶¶ 10, 32 (explaining that legal assistant incorrectly "saved a scanned copy of the letter in a 'lien' folder within . . . Johnson's electronic case file"); *see* Docket Item 16-3 at 45-46 (legal assistant's affidavit).  As a result, neither

Johnson nor the attorneys who were handling her case realized that HHS had denied her administrative tort claim.  Docket Item 19-1 at ¶¶ 31-32; Docket Item 16-3 at 41-43.

Unaware that HHS already had denied the federal claim, "Johnson and her counsel . . . diligently pursue[d a] parallel state action that [Johnson had] filed in October 2021" against Dr. David Paul and the Breast Screening Center of Western New York.[3]  Docket Item 19-1 at ¶ 26; Docket Item 20-1 at ¶ 3.  Then, on March 3, 2023, Johnson commenced this suit against the United States under the FTCA, asserting that she had filed an administrative tort claim with HHS and "ha[d] yet to receive final disposition of her claim" from the agency.  Docket Item 1 at ¶¶ 10-15.  But that assertion was not entirely accurate: in fact, HHS had denied her claim six months and 27 days before she filed her complaint.  Docket Item 19-1 at ¶¶ 31-32, 34.

The United States moved to dismiss the case on jurisdictional grounds under Federal Rule of Civil Procedure 12(b)(1).  Docket Items 4 and 4-3.  The government asserted that the FTCA requires a plaintiff to commence a federal lawsuit within six months of the denial of her administrative claim.  Docket Item 4-3 at 4-5.  Because Johnson missed that deadline, the government argued, this Court had no subject matter jurisdiction over her case.  *Id.* at 5.

In response, Johnson conceded that her claim was untimely due to an "honest office error."  Docket Item 9 at ¶ 51.  But she asserted that the "time limit" for filing a federal lawsuit under the FTCA is "not jurisdictional" and is "thus subject to equitable tolling."  *Id.* at ¶ 25.  For that reason, she said that the United States' Rule 12(b)(1)

---

[3] At some point, the state court case, which "ar[ose] from the same set of facts as" this federal case, settled for $1.35 million.  Docket Item 20-2 at ¶ 1.

motion was "procedurally defective," *id.* at ¶ 4, and should have been brought as a "[Federal Rule of Civil Procedure] 56 motion for summary judgment" because whether a deadline should be equitably tolled depends on "extrinsic evidence," *Id.* at ¶¶ 26-27. The United States replied, conceding that its Rule 12(b)(1) motion was improper and asking this Court to "convert" that motion into one for summary judgment under Rule 56. Docket Item 10 at 1.

On February 6, 2024, this Court heard oral argument on the motion to dismiss. Docket Item 15.  Instead of converting the motion to dismiss, the Court instructed the United States to withdraw that motion without prejudice to its filing a motion for summary judgment.  *Id.*  The United States therefore withdrew its motion to dismiss, Docket Item 13, and moved for summary judgment, Docket Item 16.  The parties then briefed and argued that motion as described above.  Docket Items 19, 20, and 26.

Following oral argument, this Court permitted supplemental filings based on Johnson's assertions that before she commenced this case, she had "stayed in regular contact with" her counsel, who "kept her apprised of the status of the state case and assured her that, if [HHS] ultimately denied her claim, [her] counsel would timely file [a] federal complaint."  Docket Item 27 (alterations omitted) (quoting Docket Item 19-1 at ¶ 28); *see also* Docket Item 19-2 at ¶ 9.  More specifically, the Court ordered that if Johnson were "willing to waive her attorney-client privilege as to the relevant communications for the purposes of th[e summary judgment] motion," she and her counsel could file "affidavits detailing the method and content of each of those communications and when each occurred."  Docket Item 27.  Both Johnson and her counsel filed declarations in response to the Court's order.  Docket Items 28 and 29.

The government responded that nothing in the declarations established Johnson's entitlement to equitable tolling, Docket Item 30, and Johnson replied, Docket Item 31.

## **LEGAL PRINCIPLES**

A court appropriately grants summary judgment under Rule 56 only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant"—that is, the party seeking summary judgment—"has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant may satisfy its burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the [non-moving] party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see* Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has satisfied its initial burden, the non-moving party "must come forward with specific facts showing that there is a genuine" dispute of material fact—that is, that a "rational trier of fact [could] find for the non-moving party" on the "record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations, emphasis, and internal quotation marks omitted). If the non-moving party fails to do so, the court will grant summary judgment. *See Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, "the court must view the evidence in the record in the light most favorable to the non-moving party" and "draw[] all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Matsushita*, 475 U.S. at 586 (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment when moving party has met its burden). Instead, under Rule 56, the party opposing a motion for summary judgment must "properly support an[y] assertion[s] of fact" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), (e); *Celotex*, 477 U.S. at 324.

## DISCUSSION

Johnson asserts claims against the United States under the FTCA, Docket Item 1, which provides a "limited waiver" of sovereign immunity, allowing parties to bring "tort suit[s] against the United States under specified circumstances," *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). The statute provides strict deadlines for bringing such claims, stipulating that "a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate [f]ederal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the

agency acts on the claim." *United States v. Wong*, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)).

The government argues that Johnson failed to comply with the second of those requirements.[4]  Docket Item 16-1 at 1, 5-6.  It points out that although HHS denied Johnson's claim on August 4, 2022, she did not file this case until March 3, 2023—six months and 27 days after the denial and therefore 27 days late under the FTCA.  *See id.* at 2-3, 5; Docket Item 16-2 at ¶¶ 7-10.  And it says that Johnson has failed to "establish[ her] entitlement to equitable tolling" of the FTCA's deadline.  *See* Docket Item 16-1 at 6.

Johnson does not contest the fact that her claim was untimely.  Docket Item 19 at 1-2, 6; Docket Item 19-1 at ¶¶ 7-10.  Instead, she argues that she is entitled to equitable tolling based on the circumstances that caused her late filing.  Docket Item 19 at 1-2, 6. Johnson says that "this Court has considerable discretion to toll [a] filing deadline to prevent an unjust outcome," such as the one that would result here should she "be deprived"—"through no fault of her own"—"of her only chance of having her case decided on the merits."  *Id.* at 1-2.

The Supreme Court has made clear that the FTCA's statutory deadlines may be equitably tolled in appropriate circumstances.[5]  *See Wong*, 575 U.S. at 420-21 (holding

---

[4] The government does not contest that Johnson met the first of the FTCA's deadlines by filing an administrative tort claim with HHS on September 1, 2021.  *See* Docket Item 16-1; 28 U.S.C. § 2401(b).

[5] As noted above, the United States initially sought to dismiss Johnson's complaint on the grounds that its lateness deprived this Court of jurisdiction over it.  *See* Docket Item 4-3.  But the government later conceded that "the [FTCA's] six[-]month statute of limitations is nonjurisdictional."  Docket Item 10 at 3.

that "the FTCA's time bars are nonjurisdictional and subject to equitable tolling" and remanding a plaintiff's case "for the [d]istrict [c]ourt to decide whether, on the facts of her case, [she] is entitled to equitable tolling").  The Second Circuit has noted that "equitable tolling is 'applicable only in rare and exceptional circumstances,'" but nonetheless is "sometimes necessary 'as a matter of fairness.'"  *Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (first quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011); and then quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996)).  "To qualify for equitable tolling, the plaintiff must establish" first, "that extraordinary circumstances prevented [the plaintiff] from filing [the] claim on time," and second, "that [the plaintiff] acted with reasonable diligence throughout the period . . . to [be] toll[ed]."  *Id.* (alterations omitted) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir.2004)); *see also Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 453 (W.D.N.Y. 2020) ("A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." (quoting *Victorial v. Burge*, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007)).

Johnson says that this Court should find an "extraordinary circumstance" here based on (1) her counsel's failure to timely file the complaint due to a paralegal's clerical error despite repeated assurances that they would do so; and (2) HHS's "clandestine" conduct.  Docket Item 19 at 10-13.  But under the caselaw neither of these circumstances is "extraordinary" for the purposes of equitable tolling analysis.[6]

---

[6] Because Johnson has not established that "some extraordinary circumstance" prevented her from filing her FTCA claim on time, the Court does not reach the question

## I.    ATTORNEY ERROR

Generally, "an attorney's negligence . . . does not provide a basis for tolling a statutory time limit." *Maples v. Thomas*, 565 U.S. 266, 282 (2012); *see Brandy H. v. Comm'r of Soc. Sec.*, 2022 WL 14672776, at *4 (W.D.N.Y. Oct. 25, 2022) ("[I]t has been long recognized that counsel's 'bad advice' provided to a client, as well as ordinary mistakes, or miscalculations of a filing deadline, generally do not rise to the level of an 'extraordinary circumstance' warranting tolling of a filing deadline." (collecting cases)). As the Second Circuit has explained, "attorney error . . . [does] not constitute the extraordinary circumstances required to toll [a statutory] limitations period" unless the "attorney's behavior [is] so outrageous or so incompetent as to render it extraordinary." *See Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003).  And courts have held that "a paralegal['s] or process server's neglect" similarly "does not excuse a late filing."  *Gov't Emps. Ins. Co. v. United States*, 2014 WL 582164, at *5 (E.D.N.Y. Feb. 14, 2014) (collecting cases); *Brandy H.*, 2022 WL 14672776, at *5.

In this case, it is undisputed that Johnson filed her complaint 27 days late due to a clerical error by her attorneys' legal assistant, who misfiled the HHS denial letter as a lien letter and thus prevented Johnson's attorneys from realizing that the FTCA's clock had begun to run.  *See* Docket Item 19-1 at ¶¶ 7-10, 34.  That filing mistake—the sort anyone could make—was, at most, simple negligence that does not rise to the level of an "extraordinary circumstance" sufficient to justify equitable tolling.  *See Gov't Emps. Ins. Co.*, 2014 WL 582164, at *4-5; *see also Irwin v. Dep't of Veterans Affs.*, 498 U.S.

---

of whether she "acted with reasonable diligence throughout the period [she] seeks to toll."  *See Phillips*, 723 F.3d at 150 (quoting *Doe*, 391 F.3d at 159).

89, 96 (1990) (holding that attorney's absence "from his office at the time that the . . .

notice [to file from the Equal Employment Opportunity Commission] was received" and

subsequent filing "within 30 days of the day on which he personally received notice,"

rather than within 30 days of when it had been received by the office, was "at best a

garden variety claim of excusable neglect" and thus did not justify equitable tolling);

*Rein v. McCarthy*, 803 F. App'x 477, 480 (2d Cir. 2020) (summary order) (attorney error

in filing administrative complaint one day late did not warrant equitable tolling).

       In fact, in a case involving facts nearly identical to those presented here, Chief

Judge Elizabeth A. Wolford of this district found that a paralegal's clerical error was

insufficient to toll the statute of limitations.  In *Brandy H.*, the plaintiff "argue[d] that she

[was] entitled to equitable tolling because of [a] clerical error made by [her attorney's]

paralegal[,] . . . who incorrectly inserted the date of [a] . . . decision in the firm's internal

case tracking system, which ultimately resulted in [the p]laintiff's attorney missing the

filing deadline by 10 days."[7]  2022 WL 14672776, at *5.  Chief Judge Wolford found that

---

[7] Johnson says that *Brandy H.* is distinguishable because "in that case, the firm was aware of the deadline by which [the firm] needed to seek judicial review[] and simply incorrectly entered it into the[] tracking system," whereas here, "[the] firm lacked notice of any filing deadline whatsoever because the only person at [its] office to see the claim denial seemingly mistook it for a lien letter."  Docket Item 19 at 12.  She further argues that just because equitable tolling was denied in that "nonbinding case" does not mean this Court lacks discretion to grant it here.  *Id.*

       Such arguments are unavailing.  Knowing a deadline and missing it seems only incrementally more egregious than missing a deadline about which one does not know.  And Johnson does not point to any case that supports the strained distinction she attempts to draw between the mistake in *Brandy H.* and the similar one made here.  *See id.*  In fact, both are the kind of ordinary mistake that the Second Circuit and the Supreme Court have held cannot give rise to equitable tolling.  *See Maples*, 565 U.S. at 282; *Baldayaque*, 338 F.3d at 152; *see also Brandy H.*, 2022 WL 14672776, at *4.  So while, as Johnson argues, *Brandy H.* does not "bind[]" this Court, *see* Docket Item 19 at 12, the precedents on which that case relies do.

the "oversight [did] not present an extraordinary situation, but, instead, amount[ed] to nothing more than a 'normal error' made by an attorney's office that [did] not justify equitable tolling."[8]  *See id.* (quoting *Baldayaque*, 338 F.3d at 152); *see also Lajoy N. v. Comm'r of Soc. Sec.*, 2023 WL 4366581, at *5 (W.D.N.Y. July 6, 2023) (holding that "clerical error made by . . . law firm [in] incorrectly inputt[ing]  . . deadline into the firm's internal case tracking system, which ultimately resulted in [p]laintiff's attorney missing the filing deadline" was not exceptional circumstance warranting equitable tolling).

Johnson attempts to analogize the facts of her case to those cases where attorney conduct was deemed "extraordinary," arguing that "the Second Circuit has regularly found extraordinary circumstances present whe[n] attorneys have failed to timely file a petition despite repeated assurances to their clients that they would do so." Docket Item 19 at 10-12.  She says that "[h]ere, as in those cases, [her counsel] failed to timely file the complaint despite repeatedly assuring [her] that [they] would do so."  *Id.* at 11.  And the supplemental declarations submitted by Johnson and her counsel show that Johnson remained in regular contact with her attorneys throughout the fall of 2022 and the spring of 2023 and received various assurances from members of the firm that they had not received a determination of the claim from HHS but would "timely file [a] federal case . . . if HHS ultimately denied [her] claim or refused to settle."  Docket Item 28 at ¶¶ 7-13; Docket Item 29 at ¶¶ 2-8.

---

[8] The court reached that conclusion notwithstanding the fact that in *Brandy H.*, the plaintiff contended that the paralegal's error was due to a "deterioration in the paralegal's mental health caused by a traumatic event"—an additional circumstance not present here.  *Brandy H.*, 2022 WL 14672776, at *5 (explaining that while "an attorney's mishandling of a client's case stemming from the attorney's mental illness may, under some circumstances, warrant tolling of filing deadlines," the paralegal's error did not constitute an extraordinary circumstance).

As the United States notes, however, the Second Circuit cases upon which Johnson relies "involve[d] attorney[] negligence that was extreme" and went beyond "a simple error of repeated [false] assurances."  Docket Item 20 at 3; *see also* Docket Item 30 at 4 ("While reliance on an attorney's representations may[] under certain circumstances rise to the level of extraordinary circumstances that could warrant tolling of a filing deadline, no such circumstances exist here.").

For instance, in *Baldayaque*, the petitioner's attorney informed the petitioner's representatives (his wife and a reverend) that it was "too late to file a [section] 2255 [habeas petition]" despite the fact that the attorney "had not done any legal research" and that "[i]n fact, at the time of th[e] meeting, [the petitioner] still had nearly fourteen months [to] file a timely petition."  338 F.3d at 148-49.  The lawyer also continued to "assure[]" the petitioner's wife that "he was taking care of everything" although he did little to nothing on the case and never even spoke directly with the petitioner himself.  *Id.* at 149.  The Second Circuit held that the petitioner was entitled to equitable tolling based on the attorney's "egregious"—and thus, "extraordinary"—conduct.  As the court explained,

> [i]n spite of being specifically directed by his client's representatives to file a [section 2255 petition], [the attorney] failed to file such a petition at all.  By refusing to do what was requested by his client on such a fundamental matter, [he] violated a basic duty of an attorney to his client.
>
> [The attorney] did no legal research on [the petitioner's] case.  [He] failed to comply with Rule 1.1 of the Connecticut Rules of Professional Conduct, which requires a lawyer to "provide competent representation to a client, [including] the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Had [counsel] made a cursory review of the law, he would have discovered that it was not "too late" to file a section 2255 petition when he met with [the petitioner's

representatives] in 1997; in fact, he would have discovered that he had until May 1998 to file such a petition within the limitations period.

*Id.* at 152 (emphases and internal citations omitted). In other words, the attorney in *Baldayaque* did not just make a simple error or a clerical mistake—he actively misled his client. The attorney's behavior in that case is far different than the conduct alleged here, and this Court cannot disagree with the government's assertion that Johnson "has received excellent representation from her counsel,"[9] Docket Item 30 at 6, except for the legal assistant's unfortunate error.

*Nickels v. Conway*, 480 F. App'x 54 (2d Cir. 2012) (summary order), also is distinguishable. In that case, the petitioner's attorneys "failed to file [a] habeas petition, despite [their] repeated promises, and apparent direction from [the petitioner], to do so." *See id.* at 56. More specifically, the lawyers "constantly apprised" the petitioner "that his petition was almost done, that timeliness was not crucial, and that the papers he had turned over to his lawyers, and could not get back, were necessary to filing—only to find himself with no petition, no lawyer, and no recourse." *Id.* at 56-57. The court deemed such conduct—essentially, the "abandonment of [a] client"—to "constitute[] an extraordinary circumstance." *Id.* at 57.

Similarly, in *Torres v. Barnhart*, 417 F.3d 276 (2d Cir. 2005), the plaintiff asserted that an attorney, "fully cognizant of the time constraints, . . . agreed to assist [him] in filing [a case]" but then "d[id] nothing at all." *Id.* at 280. The Second Circuit found that was "at least enough to warrant an evidentiary hearing into whether equitable tolling

---

[9] That the excellence of the representation should doom her claims here is deeply—and perversely—ironic. *See infra* Conclusion. And this Court would welcome a reversal correcting that perversity.

should be invoked." *Id.* But it specifically distinguished the "seriously misle[ading]" nature of the attorney's conduct in *Torres* from cases in which "a retained attorney" simply failed to "timely file a federal . . . complaint." *Id.*; *see also Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015) ("[A]ttorney negligence may constitute an extraordinary circumstance when it is 'so egregious as to amount to an effective abandonment of the attorney-client relationship.'" (quoting *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir.2012))), *as corrected* (Nov. 12, 2015).

*Dillon v. Conway*, 642 F.3d 358 (2d Cir. 2011)—the last of the Second Circuit cases that Johnson cites in support of her argument—presents a slightly more nuanced set of facts. There, the court granted equitable tolling based on the lawyer's "miscalculation of the expiration of [the relevant] statute of limitations." *Id.* at 361. And in granting equitable tolling, the Second Circuit noted that the petitioner—like Johnson— was "persistent in maintaining contact with" counsel about the filing of the action; notwithstanding that repeated contact, and also as here, the lawyer erroneously brought the action just past the deadline. *Id.* at 363-64; *see* Docket Item 19-1 at ¶ 28; Docket Item 28 at ¶¶ 11-13. In this case, the complaint was 27 days late; in *Dillon*, it was only one. 642 F.3d at 360-361.

In *Dillon*, however, the Second Circuit made clear that its decision rested on the fact that the attorney had not only made a miscalculation about the relevant deadline but had "affirmatively and knowingly *misle[d]*" his client. *Id.* at 364. That is, the lawyer in that case had filed the petition on what he believed (erroneously) to be the deadline despite the petitioner's "specific[]" instruction "to avoid the possibility of a single-day error by not waiting until the last day to file the petition." *Id.* at 363 (alterations,

emphasis, and internal quotation marks omitted). Thus, the Court concluded, "[a]lthough miscalculating a deadline is the sort of garden variety attorney error that cannot on its own rise to the level of extraordinary circumstances, [the] case involve[d] more than a simple miscalculation": The attorney had affirmatively promised to do something and had then "breached that promise" by "fail[ing] to follow his client's instruction." *Id.* at 364 (emphasis omitted).

No such affirmative and knowing misrepresentation was made in this case. To be sure, after HHS denied her claim on August 4, 2022, Johnson's counsel told her several times that her claim had not yet been decided and that they would timely file the federal action if the claim was denied. Docket Item 19-1 at ¶¶ 28, 31; Docket Item 28 at ¶¶ 11-13. Those statements turned out not to be true. Docket Item 19-1 at ¶¶ 28, 31; Docket Item 28 at ¶¶ 11-13. But Johnson's counsel did not know those statements were not true when they were made, nor did counsel ever *knowingly* breach a promise that had been made to her. Instead, Johnson's complaint was untimely as the result of a "mere" attorney (or, more precisely, paralegal) error—the kind of error that both the Supreme Court and the Second Circuit repeatedly have stated is not enough to warrant equitable tolling. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631, 651-52 (2010); *Maples*, 565 U.S. at 282; *Baldayaque*, 338 F.3d at 151-52; *Dillon*, 642 F.2d at 364.

Under the caselaw—including Supreme Court and Second Circuit precedent— the conduct of Johnson's attorneys, including the clerical error made by their paralegal, is therefore not an extraordinary circumstance justifying equitable tolling.

## II.    GOVERNMENT MISCONDUCT

Johnson also urges this Court to find that tolling is warranted because "the government has hindered [her] attempts to exercise her rights by acting in a misleading or clandestine way."  Docket Item 19 at 13 (quoting *Wong v. Bowen*, 854 F.2d 630, 631 (2d Cir. 1988)).  More specifically, she says that "HHS took more than 11 months to deny [her] claim," much longer than "the six-month period prescribed by the" FTCA, and that before the agency denied her claim, it ignored "several" requests from her counsel seeking an update.  *Id.* (citing 28 U.S.C. § 2675(a)).

Johnson's statement of the law is correct.  *See Wong*, 854 F.2d at 631; *see also Bowen v. City of New York*, 476 U.S. 467, 480-81 (1986) (granting equitable tolling where plaintiffs, "[t]hough they knew of the denial or loss of benefits, . . . did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity" since the "clandestine policy" underlying those denials "was uncovered only in the course of th[e] litigation" (citation omitted)).  But she does not point to any specific instances of misleading or clandestine conduct committed by the government that "hindered [her] attempts to exercise her rights."  *See Wong*, 854 F.2d at 631.  Instead, she says only that HHS took a long time to decide her claim and—before its decision to deny it—failed to respond to two letters sent by her counsel. Docket Item 19 at 13; *see* Docket Item 16-3 at 16, 18; Docket Item 16-2 at ¶¶ 5-6; Docket Item 19-1 at ¶¶ 22-25.

If HHS had ignored requests for an update sent *after* its denial of her claim, that might be one thing:  HHS presumably would have been on notice that Johnson and her counsel were not aware her claim had been denied, and its failure to correct that impression within the time to challenge that denial might have been misleading.  But

Johnson says no such thing here.  *See* Docket Item 19 at 13; *see* Docket Item 16-3 at 16, 18; Docket Item 16-2 at ¶¶ 5-6; Docket Item 19-1 at ¶¶ 22-25.  Moreover, as the government pointed out at oral argument, once the six-month period under the FTCA for HHS to consider the claim had expired, Johnson was free to file her federal claim, and the agency's lack of response did not impair her from doing so.  *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.").  Instead, Johnson's failure to timely commence this suit was the result of a clerical error at the law firm that represented her; however understandable and forgivable this Court might find that mistake, the delay it caused cannot be attributed to the government.

The Second Circuit has declined to hold that even an agency's "unintentionally ambiguous statements" were "misleading or clandestine" conduct that warranted equitable tolling.  *See Bachand v. Saul*, 778 F. App'x 74, 75 (2d Cir. 2019) (summary order) (holding that litigant was "not entitled to equitable tolling" based on his allegation that Social Security Appeals Council "engaged in misleading communications" when communications identified "amount[ed]" at best to "some ambiguous statements").  In the absence of facts showing that government action hindered Johnson's ability to vindicate her rights, this Court cannot find that the agency's failure to respond to letters sent before the denial of Johnson's claim was "misleading or clandestine" conduct that warrants equitable tolling.  *See id.*

**<u>CONCLUSION</u>**

In sum, under well-established law, Johnson has not shown that any "extraordinary circumstance" warrants the equitable tolling of her statutory deadline to bring her FTCA claim. And because it is undisputed that Johnson's complaint was filed 27 days too late, this action cannot proceed.

This Court recognizes that its holding—based on a mere 27 days of tardiness—is "harsh," *Brandy H.*, 2022 WL 14672776, at *6, and even "heartbreaking," *Dillon*, 642 F.3d at 364 (citation omitted). Indeed, the Court is not insensitive to the hardship that the imposition of the statutory deadline here might cause Johnson, and it would have reached a different result were this a matter of first impression. As one commentator has observed, "[t]his approach to equitable tolling . . . creates an ironic result in that [litigants] will actually fare better the worse their attorney's conduct becomes." Marni von Wilpert, Holland v. Florida*: A Prisoner's Last Chance, Attorney Error, and the Antiterrorism and Effective Death Penalty Act's One-Year Statute of Limitations Period for Federal Habeas Corpus Review*, 79 Fordham L. Rev. 1429, 1467 (2010). Stated another way, because "[e]quitable tolling is never granted for 'ordinary' attorney negligence . . . if the attorney commits misconduct when filing the petition past [the statutory] deadline, he is actually putting his client in a better position for equitable tolling than if he were merely negligent in missing the deadline." *Id.*

But the question presented here is not a matter of first impression and this Court's discretion to grant equitable tolling is "not absolute." *See Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023). "The Second Circuit has made it abundantly clear that 'equitable tolling is considered a drastic remedy applicable only in rare and exceptional

circumstances.'" *Yusuf v. Jones*, 2020 WL 4369641, at *3 (E.D.N.Y. July 30, 2020) (some internal quotation marks omitted) (quoting *A.Q.C.*, 656 F.3d at 144). "A court may not simply disregard this instruction in consideration of a party's garden variety mistake, regardless of how devastating to his case it may be." *Id.* Because "the circumstances of the case do not rise to the level of 'extraordinary'" under clearly established law, Johnson's claim cannot proceed and the United States' motion for summary judgment must be granted. *See Brandy H.*, 2022 WL 14672776, at *6. And while the Second Circuit might be able to make the caselaw more consistent with common sense, this Court cannot.

Thus, for the reasons explained above, the United States' motion for summary judgment, Docket Item 16, is GRANTED. The Clerk of the Court shall close this case.


SO ORDERED.

Dated:  February 5, 2025
        Buffalo, New York



  */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE